### Case No. 4,523.

ERRETT v. CRANE.

[21 Int. Rev. Rec. 268.]

Circuit Court, E. D. Michigan. July 2, 1875.

The following is the substance of the oral judgment delivered by

EMMONS, Circuit Judge. This was a bill to quiet the complainant's title to lands situate in Wayne county, known as the Reeder farm. The complainant claims title as an heir of John Harvey, to whom the lands were patented in 1811. The defendant in 1869 commenced seven separate suits in ejectment for the recovery of different parcels together, including the entire tract. These suits at law have been strenuously contested by the defendants therein, and the main suit of Crane v. Reeder [Case No. 3,356] has been three times tried by a jury of Wayne county, resulting in each case in a verdict in favor of the defendants. These verdicts and the judgments thereon rendered have been reversed in the supreme court of Michigan, are reported in 21 Mich. 24; 22 Mich. 322; 25 Mich. 303; and the case stands at issue. Petitions to remove these suits to the federal court have been filed and granted by the circuit court for Wayne county. Such orders, however, have since been reversed by the supreme court of the state, and upon motions made to remand two of the cases they have been certified from the circuit court of the United States upon a certificate of division of opinion, and are there awaiting argument. The defendant in this suit filed a plea and disclaimer, setting up the pendency of these suits at law and alleging the proceedings with particularity. The complainant set the plea down for argument, and it was argued and submitted, D. B. and H. M. Duffield, Ashley Pond and Theodore. Romeyn appearing for complainant, and Douglass and Bowen and William P. Wells appearing for the defendant Crane. The facts in this case, so far as they were necessary to determine the sufficiency of the plea, were very few. The many years of complicated litigations carried on in the state tribunal, and above referred to, although much discussed at the bar, had no significance here. The questions raised by the pleas could all be disposed of without other statement than to say, that 10 tenants in common owned the tract of land to quiet title to which the present bill is filed. Against two of these tenants the defendant Crane brought ejectment in the state court. The others were not made parties, nor were any steps taken to implead them under the Michigan law. The complainant Errett, one of the owners, filed her bill in this court to remove the cloud upon her title, which Crane's claim creates. The defendant, Crane, pleads in bar the pendency of the ejectment in the state court against her co-tenants. It is claimed that the jurisdiction of this court, to entertain a bill like this, depends upon the absence of all opportunity on the part of a complainant to litigate the question in a suit

at law; and that, as the complainant may make himself a party defendant to the ejectment suit of Crane, this court ought not to entertain a suit here to determine in equity a right ready determinable at law.

Judge EMMONS said: He had not, from the first moment the case was opened, felt any doubt in the case; and he ventured the opinion that, but for the extraordinary history which the litigation between other parties had had in the state court, a question like that now before him would not have elicited such prolonged discussion at the bar. Between Crane and the two tenants against whom he has brought ejectment there have been, during the last 10 years, as already stated, three trials at law, in all of which verdicts have gone against him, and in each case they have been reversed by the supreme court. That after so many years' contest in the state court, other tenants in common file their bills, to have tried and determined here the whole matter in controversy, takes counsel by surprise, and the first impression is that such a jurisdiction is impolitic, and that every intendment should be against it. Had the circumstances been different, and the case one where a single resident tenant in common had been sued in ejectment, and numerous other owners, citizens of other states, or aliens, had immediately put their bills on file in the federal court, the consistency of such a practice, with the privileges accorded by the constitution and laws of the United States, would have been such as to have commended the course to the judgment of all. If the doctrine of the defendant's counsel be true, then it would follow, that if a citizen of another state should die, leaving large estates in this, with many heirs, and a single one of them residing here, the owner of a tax title, in an interior county, bringing ejectment against the single resident tenant in common, might compel all the other complainants to litigate in the state court, thus depriving them of their right to seek a remedy in a federal tribunal. If an ejectment against one tenant in common is such an impleading of all the others as prohibits their seeking an independent remedy, then the absurd consequence referred to necessarily follows. In a case thus stated, it would hardly be contended that the co-tenants were bound to come in and make themselves defendants in the state tribunal. It was the thoroughness with which this matter had been heretofore litigated in the actions of ejectment, and the practical connection with them of the other tenants in common, one of whom is now complainant in this case, which suggests to the mind of counsel, what has been urged at the bar, as a gross abuse of jurisdiction. With these accidents, it was said this court had nothing to do. The abstract question for judgment was, could a tenant in common, file his bill in this court to quiet title, after his co-tenant had been sued by the claimant in an action of ejectment in the state tribunal? That he might do so, the court said, seemed to him now, as in the outset it did, entirely clear. The general jurisdiction of the court to entertain such a proceeding had not been disputed. It had not been for the purpose, his honor said, of removing any doubt upon that subject, that he had requested counsel to collect and analyze some of the cases upon this subject, but only that he might the better judge, from the reasons upon which the jurisdiction depended, whether, in the circumstances of this case, it would be exerted. Wherever the statutory requisites exist, and a complainant avers himself to be in possession of premises to which a claim is asserted by the defendant, and that no action at law can be brought to have the claim determined, it has always been deemed sufficient to launch the jurisdiction. They authorize a rule broader than that contended for by the defence. If it be true in any case that the ability of a complainant to become a party to a legal proceeding, in which the title might be litigated is an answer to a suit of this nature, the occasion must afford a remedy, adequate, and without embarrassment. He should require the plea to set forth facts showing the cause in the state tribunal was in such condition that the appearance of the complainant there would enable her to remove the cause to this court if she elected so to do. Had Crane made her a defendant originally she might have availed herself of that right. It is enough, however, to authorize the retention of her bill, that she is in possession of her land, and that she can commence no suit to test the title of the defendant Crane. See Alexander v. Pendleton, 8 Cranch [12 U. S.] 462; 3 Pet. Cond. R. 216; Crase v. Burcham, 1 Black [66 U. S.] 352; Clark v. Smith, 13 Pet. [38 U. S.] 195. That the complainant brought herself within the plain terms of the statute was conceded. She was in possession of the property. The complainant claimed title to her land, and no suit at law was pending to which she was a party. It is argued that, although the literalisms of the law include the complainant, that when we look to the reason of the enactment and the history of its administration, it is apparent that it is not intended to apply to a case where an opportunity is afforded a complainant to litigate at law if he pleases. It is added that the pendency of the ejectment suit in the state court, against the co-tenants, affords an opportunity for this complainant to go there, to become a party defendant, and have her right determined. Whether she can go there under the state statute is extremely doubtful. We are inclined to think she is not a proper defendant, unless the plaintiff originally elected to make her so. She cannot force herself into a litigation, the judgment in which can in no way offset her rights. I shall not go over the statutes, the judge said, to discuss this question, for he did not deem it necessary to decide it. He contented himself with say-

ing generally that no clause of the statute included a tenant in common. The word "landlord," as construed at common law, did not authorize the appearance of a tenant in common to defend. That she could not so appear, irrespective of the statute, the following cases show: Austin v. Hall, 13 Johns. 286; Low v. Mumford, 14 Johns. 426; Decker v. Livingston, 15 Johns. 479; Hill v. Gibbs, 5 Hill, 56; Doolittle v. Blakeley, 4 Day, 273; White v. Pickering, 12 Serg. & R. 435; Innis v. Crawford, 4 Bibb, 241; Adams, Ej. 186; Tyler, Ej. 202. The above cases show that tenants in common cannot join as plaintiffs. The following show that they cannot join as defendants: Jackson v. Bradt, 2 Caines, 169; Malcom v. Rogers, 5 Cow. 192; Jackson v. Flint, 2 Cow. 594.

The proper question here, however, was said to be, not whether the complainant might not make herself a party defendant to a pending litigation, assuming the burden of its vast expenses and the disadvantages of its anomalous condition, but whether, under the constitution and laws of the United States, she had not the right to litigate her claims in this tribunal, notwithstanding a citizen of Michigan had brought an ejectment suit against somebody else in the state tribunal. Her rights were in no legal sense connected with those of the defendants in the ejectment suit. They did not claim in privity with each other. A judgment against the one had no tendency to conclude the other. The admissions which bound one tenant in common could not be given in evidence against his co-tenant. Estoppels work only against the individual tenant which created them. And so far as the question before this tribunal is concerned, their relations are the same as though their several ownerships were of distinct tracts. Upon the oral argument, it was assumed by counsel for the defence that qualities attached to joint ownership of tenants in common were quite distinct from those of independent owners of property in severalty; and, although in replies given to interrogatories from the bench, the line was not distinctly drawn, still, counsel were understood to maintain doctrines quite different from those here declared. Our request has been answered by counsel for the complainant, and a few judgments and authors have been cited which fully maintain the common truisms in reference to the title of tenants in common which we have stated. See Freem. Judgm. § 189, and cases there cited. Adams, Ej. p. 186, cites many cases and says that "joint tenants or possessors have a sufficient interest in the lands held in joint tenancy or parcenary to entitle them to make a joint demise; but tenants in common have not, and the reason for this difference seems to be that tenants in common have several and distinct titles and estates, independent of each other, so as to render the freehold several also. The court said, it had no doubt that, whether

the state law did or did not authorize Mrs. Errett to appear as a co-defendant and have her rights determined, she was not compelled so to do. It was enough that she was in possession of land; that the defendant Crane had elected to bring his action of ejectment in the state court, and not make her a defendant. She came within the language of the statute, and it was not at war with public policy, and it was in harmony with the general purposes for which jurisdiction was given to this court originally, that she should be permitted to sue here. Should Crane, in the state court, commence originally an action of ejectment against her, now, she might remove it here. To compel her, at the present stage of the proceedings, to become a party defendant in the state court would, in all probability, force her to remain there, and thus resign the constitutional privilege of choosing her forum. See Turner's Case [Case No. 14,245], which holds that a landlord who voluntarily appears in a suit brought against his tenant cannot sever and remove. The act of 1866 (14 Stat. 306) was the first that gave one defendant a right to remove in a suit brought against several. Looking at this act, which was in force when this bill was filed, and at its re-enactment (section 639, Rev. St.), it would seem that this right of removal should be recorded only in a case where the party seeking it is made defendant by the plaintiff's forcing him into a state tribunal, and thus impleading him. It would require much liberality of interpretation for a state tribunal to hold that Mrs. Errett could not file a similar bill there, notwithstanding the pendency of this ejectment against her co-tenant. They would have to determine that an ejectment against one tenant in common was substantially a suit against all. To so hold would be at war with the whole current of judgments, both in common law and those under the several statutes of the different states. Whether such would be the judgment there would not determine the question here. He was quite confident no answer could be given to the present bill unless it was the pendency of a suit to which the present complainant was an actual party. Much importance in argument was given to what was assumed to be the gross impolicy of this jurisdiction, erroneously assuming it to create a double litigation of the same matter. It is not so. Mrs. Errett's title is in no way called in question in the state tribunal. But if it were, a double litigation has not been deemed so impolitic as to call for a strained and illiberal construction of a statute in order to avoid it. That a suit in the state court, even between the same parties, is not an abatement of an action pending in this court, has been frequently decided. See White v. Whitman [Case No. 17,561]; Bowne v. Joy, 9 Johns. 221; Walsh v. Durkin, 12 Johns. 99; Wadleigh v. Veazie [Case No. 17,031]; New England Screw Co. v. Bliven

[Id. 10,156]; Mitchell v. Bunch, 2 Paige, 620. Judge EMMONS took occasion to express much disapprobation of the general doctrine of these latter cases, which held that the federal and state courts were foreign to each other, in such sense that a suit pending in one was not an abatement of a like litigation in the other. With the justness or policy of such a rule he had nothing to do, however, here; he referred to these judgments only to show that the mere fact of such litigation did not, so far as precedent was concerned, call for any extraordinary canons of construction in order to avoid it.

Counsel for the defence had argued that, if a final decree were rendered in Crane's favor, in the state court, and if the sheriff should put him in possession of the property, that he would have a right to oust the complainant, even although her possession were protected by a final decree of this court. This, his honor thought an entire misapprehension. The state sheriff would have no right whatever to oust any one of the complainant's co-tenants under a judgment in Crane's ejectment suit. Final process in that case would authorize such officer to put the plaintiff in possession, and to oust the two defendants named in the writ. He would have no power whatever to interfere with the equal rights of the complainant in this case, and the other seven tenants in common who might occupy with her. There was neither conflict nor inconsistency in the two litigations. The suit between Crane and Eliza Reeder and her co-defendant in ejectment, might be determined one way; that between the complainant and Crane differently; still other suits might be commenced by the seven co-tenants against Crane in this tribunal. Indeed he saw no difficulty in their becoming parties to the present proceeding. A final decree in favor of all, or part, would in no way come in conflict with the judgment in ejectment in the state court. Writs of assistance in each might be consistently and harmoniously executed. Quite a number of other supposed conflicts and inconsistencies had been stated at the bar, not one of which could spring from the exercise of jurisdiction which was now invoked. They were all misapprehensions of the law.